John H. WITZKE, Respondent,

v.

**MESABI REHABILITATION SERVICES, INC.,**
Appellant.

No. A08–1011.

Court of Appeals of Minnesota.

July 14, 2009.

Catherine E. Baker, John D. Kelly, Hanft Fride, Duluth, MN, for respondent.

Mitchell J. Brunfelt, Colosimo, Patchin, Kearney & Brunfelt, Ltd., Virginia, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; CONNOLLY, Judge; and JOHNSON, Judge.

## OPINION

PETERSON, Judge.

In this appeal from summary judgment granted by a judicial officer, appellant argues that the judicial officer did not have subject-matter jurisdiction to hear and decide the case on a motion for summary judgment. We reverse and remand.

## FACTS

Appellant Mesabi Rehabilitation Services, Inc. (Mesabi) provides vocational-rehabilitation services to injured persons. Shortly after he founded Mesabi in 1988, Jim Jackson offered respondent John Witzke a position with Mesabi. Approximately eight months later, Jackson presented Witzke with an employment agreement under which Witzke would train as a qualified rehabilitation consultant and receive a substantially increased salary. The contract included noncompete and nonsolicitation provisions. Over the next 16 years, Witzke worked in this position.

In May 2006, Witzke announced that he was leaving Mesabi to form his own vocational-rehabilitation business. On the same day that he notified Mesabi that he was leaving, Witzke sent letters to the Mesabi clients that he served. The letters stated that Witzke was leaving Mesabi and that the clients could choose to either continue working with Witzke or stay with Mesabi. Approximately 35 clients, who ac-

counted for approximately one-third of Mesabi's gross revenue, chose to continue working with Witzke.

In June 2006, Witzke brought an action to have the noncompete and nonsolicitation provisions in his employment agreement declared invalid and unenforceable or, alternatively, to have them reformed. Mesabi counterclaimed, seeking injunctive relief to specifically enforce the contract provisions and damages for breach of contract and misappropriation of trade secrets. The case was heard by a judicial officer of the district court. Upon cross-motions for summary judgment, the judicial officer ruled that the noncompete and nonsolicitation provisions were void for lack of consideration. The judicial officer did not address any other issues. On appeal from the summary judgment, this court reversed and remanded for the judicial officer to consider the remaining issues raised in the parties' motions. *Witzke v. Mesabi Rehab. Servs., Inc.*, No. A07–0421, 2008 WL 314535, at *4 (Minn.App. 2008).

■ On remand, the judicial officer again granted summary judgment in favor of Witzke and, in doing so, ruled that the noncompete and nonsolicitation provisions were unreasonable and could not be made reasonable using the blue-pencil doctrine.[1] The judicial officer also ruled that Mesabi's client list, which Witzke had used to notify his clients that he was leaving Mesabi, was not a trade secret. This appeal followed.

## ISSUE

Did the judicial officer have subject-matter jurisdiction to hear and decide this case on a motion for summary judgment?

## ANALYSIS

■ As a threshold matter, Mesabi challenges the judicial officer's jurisdiction to hear and decide this case. The existence of subject-matter jurisdiction presents a question of law, which we review de novo. *Mercer v. Andersen*, 715 N.W.2d 114, 118 (Minn.App.2006). Subject-matter jurisdiction determines a court's authority to decide a particular class of actions and the particular questions before it. *Herubin v. Finn*, 603 N.W.2d 133, 137 (Minn. App.1999). Witzke argues that Mesabi waived this issue by not objecting to the judicial officer's authority. But a lack of subject-matter jurisdiction may be raised at any time, even for the first time on appeal. *Metge v. Cent. Neighborhood Improvement Ass'n*, 649 N.W.2d 488, 499 (Minn.App.2002). Because subject-matter jurisdiction goes to the court's authority to hear the matter at all, it cannot be waived or conferred by the parties' consent. *Tischer v. Hous. & Redev. Auth.*, 693 N.W.2d 426, 430 (Minn.2005).

The supreme court considered the constitutional limits on a judicial officer's jurisdiction in *State v. Harris*, 667 N.W.2d 911 (Minn.2003). In *Harris*, a jury had convicted the appellant of first-degree felony murder and attempted first-degree murder. *Id.* at 913. Without objection, a judicial officer had presided over most of the pretrial proceedings and all aspects of the trial, including sentencing. *Id.* On appeal, the appellant argued that his convictions must be reversed and a new trial ordered because the judicial officer did not have jurisdiction to hear and try cases of first-degree murder. *Id.* The supreme court agreed and reversed, holding that assigning a felony-level trial to a judicial

---

1. Under the "blue-pencil doctrine," courts have discretion to modify unreasonable restrictions on competition in an employment agreement by enforcing restrictions only to the extent reasonable. *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 n. 8 (Minn.2002).

officer is unconstitutional and that the appellant was entitled to a new trial. *Id.*

The supreme court began its analysis in *Harris* by reviewing the background of the judicial-officer position within Minnesota's court system. *Id.* at 913–16. Next, the supreme court interpreted Minn.Stat. § 487.08, subd. 5 (2002),[2] which allowed the chief judge of a judicial district to assign matters to a judicial officer, to mean that a chief judge may assign any district court or county court[3] matter to a judicial officer. *Id.* at 916–17. The supreme court then considered whether granting the chief judge of a judicial district the authority to assign any district court matter to a judicial officer violates the Minnesota Constitution. *Id.* at 917–20.

The supreme court's analysis of this constitutional question began with the language of Minn. Const. art. VI, § 1, which states: "The judicial power of the state is vested in a supreme court, a court of appeals, if established by the legislature, a district court and such other courts, judicial officers and commissioners with jurisdiction inferior to the district court as the legislature may establish." The supreme court determined that an inferior court is " 'a court having limited and specified rather than general jurisdiction.' " 667 N.W.2d at 918 (quoting *Webster's Third New International Dictionary* 1158 (1993)). Then, applying this definition, the supreme court stated:

> If an inferior court is one that has limited and specified rather than general jurisdiction, then it naturally follows that for a judicial officer to remain inferior to the district court under article VI, the judicial officer must have limited and specified jurisdiction. In other

words, the judicial officer must be a person having limited rather than general jurisdiction.

*Id.*

The supreme court then applied this reasoning to the facts of the case before it and concluded:

> The record reveals that the judicial officer presided over most of the pretrial proceedings, as well as Harris's entire trial, including jury selection, ruling on evidentiary objections, and instructing the jury. He also sentenced Harris to life in prison. His order of judgment was appealable in the same manner as all other final orders of the district court. In sum, he presided over this entire felony trial and was utilized as the functional equivalent of a district court judge.
>
> The power of the judicial officer to hear and try this felony level case was not limited and specific. Rather, the judicial officer exercised jurisdiction over a complex felony trial in which substantive constitutional issues were generally implicated. If judicial officers are allowed to preside over one of the weightiest matters within the district court's jurisdiction—a first-degree murder trial—then there is no effective limit to the judicial officer's jurisdiction.

*Id.* at 919. The supreme court held

> that the legislative grant of authority to the chief judge of a judicial district to assign any district court matter to a judicial officer pursuant to Minn.Stat. § 487.08, subd. 5, violates Article VI, Section 1 of the Minnesota Constitution, because the grant of authority runs afoul of the constitutional mandate that judi-

---

2.  Minn.Stat. § 487.08, subd. 5, has not been amended since the supreme court issued its opinion in *Harris*.

3.  The statutes that established county courts were repealed in 2006. 2006 Minn. Laws ch.260, art. 5, § 54 at 794.

cial officers be inferior in jurisdiction to the district court.

*Id.* at 919–20. Because the case involved the unconstitutional delegation of authority to a judicial officer to preside over a complex felony trial, the supreme court concluded that Harris was entitled to a new trial before a district court judge. *Id.* at 921.

Like the judicial officer in *Harris,* the judicial officer in the present case presided over virtually an entire judicial proceeding. The proceeding may not have been "one of the weightiest matters within the district court's jurisdiction," as in *Harris,* but that does not mean that the *Harris* court's reasoning does not apply. Under our state constitution, "[t]he district court has original jurisdiction in all civil and criminal cases." Minn. Const. art. VI, § 3. The critical element in *Harris* was not that the case was a felony criminal proceeding; it was that the judicial officer exercised jurisdiction over the entire proceeding and, in effect, acted as the functional equivalent of a district court judge.

██ The same is true for the judicial officer here, who decided cross-motions for summary judgment. Summary judgment has been described as "one of the most important procedural devices under the rules of civil procedure." 2 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 56.1 (4th ed.2005); *see also Dixon v. Depositors Ins. Co.,* 619 N.W.2d 752, 757 (Minn.App.2000) (describing summary judgment as "an integral part of civil procedure, . . . designed to secure the just, speedy and inexpensive determination of every action" (quotations omitted)). By granting summary judgment, the judicial officer determined the action between the parties and rendered a final judgment that was appealable in the same manner as other final orders of the district court. Determining an action by granting summary judgment is not an exercise of "inferior" jurisdiction; it is acting as the functional equivalent of a district court judge. Therefore, we conclude that under *Harris,* permitting the judicial officer to determine this matter by granting summary judgment violated the constitutional mandate that the jurisdiction of judicial officers be inferior to the district court. Consequently, we reverse the summary judgment and remand for further proceedings.

## DECISION

When the judicial officer exercised jurisdiction over this matter to grant summary judgment, the jurisdiction that he exercised was not inferior to the jurisdiction of the district court, which violated the requirement in article VI, section 1, of the Minnesota Constitution that a judicial officer's jurisdiction be inferior to the jurisdiction of the district court.

**Reversed and remanded.**