Barbara LINERT, et al., Respondents,

v.

Michelle MACDONALD, Relator,

Office of Administrative Hearings, Respondent.

A17-0127

Court of Appeals of Minnesota.

Filed September 11, 2017

John M. Baker, Katherine M. Swenson, Karl C. Procaccini, Christopher L. Schmitter, Greene Espel PLLP, Minneapolis, Minnesota (for respondents Barbara Linert, et al.).

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for relator).

Lori Swanson, Attorney General, St. Paul, Minnesota (for respondent Office of Administrative Hearings).

Considered and decided by Bjorkman, Presiding Judge; Cleary, Chief Judge; and Bratvold, Judge.

## OPINION

BJORKMAN, Judge

Relator challenges an order issued by the Minnesota Office of Administrative Hearings (OAH) determining that she violated Minn. Stat. § 211B.02, arguing OAH lacked jurisdiction and that the statute is unconstitutionally overbroad. We affirm.

## FACTS

In 2016, relator Michelle MacDonald was a candidate for the Minnesota Supreme Court. During her campaign, she sought the endorsement of the Republican Party of Minnesota (the RPM), which had endorsed her during her unsuccessful 2014 campaign. Prior to the RPM's 2016 state convention, MacDonald was interviewed by the party's judicial-election committee. The committee is authorized to recommend candidates for endorsement by the RPM but does not itself endorse candidates. The committee voted 20-2 to recommend MacDonald's endorsement to the RPM. The RPM ultimately decided not to endorse any candidate in the Minnesota Supreme Court race. MacDonald therefore did not receive the RPM's endorsement.

On October 18, 2016, the Star Tribune published a "Voter Guide" with profiles of candidates running for various state offices, including MacDonald. The profile was based on information submitted by MacDonald. The "Endorsements" section indicated that MacDonald received an endorsement from "GOP's Judicial Selection Committee 2016." On October 21, MacDonald requested that the claimed endorsement be removed from her candidate profile. The Star Tribune removed the endorsement.

Respondents Barbara Linert and Steven Timmer (Linert) subsequently filed a complaint with OAH. They alleged that, in claiming the judicial-election committee endorsed her, MacDonald violated Minn. Stat. § 211B.02. An administrative-law judge (ALJ) found probable cause to believe that MacDonald violated the statute. Following an evidentiary hearing, a panel of three ALJs determined that MacDonald violated the statute by knowingly claiming an endorsement that she had not in fact received. OAH imposed a $500 civil penal-

ty. MacDonald appeals by writ of certiorari.

## ISSUES

I. Did OAH have subject-matter jurisdiction?

II. Is Minn. Stat. § 211B.02 unconstitutionally overbroad?

## ANALYSIS

### I. OAH had subject-matter jurisdiction.

 Subject-matter jurisdiction refers to the tribunal's "authority to hear the type of dispute at issue and to grant the type of relief sought." *Seehus v. Bor-Son Constr., Inc.*, 783 N.W.2d 144, 147 (Minn. 2010). Because subject-matter jurisdiction goes to the authority of the decision-maker to hear the case, it may not be waived and can be raised for the first time on appeal. *Witzke v. Mesabi Rehab. Servs., Inc.*, 768 N.W.2d 127, 129 (Minn.App. 2009). Subject-matter jurisdiction "is a question of law that we review de novo." *Nelson v. Schlener*, 859 N.W.2d 288, 291 (Minn. 2015).

 MacDonald argues that OAH lacked subject-matter jurisdiction because the newspaper's voter guide does not constitute campaign material, as defined by Minn. Stat. § 211B.01 (2016). But this argument relates to the merits of Linert's complaint, not whether OAH had authority to consider it.[1] Indeed, the legislature expressly provided that complaints asserting false-endorsement claims must be filed with and decided by OAH in the first instance. Minn. Stat. § 211B.32, subd. 1(a) (2016). Accordingly, OAH had subject-matter jurisdiction.

### II. Minn. Stat. § 211B.02 is not unconstitutionally overbroad.

 The constitutionality of a statute is a question of law, which we review de novo. *Rew v. Bergstrom*, 845 N.W.2d 764, 776 (Minn. 2014). While statutes generally carry a presumption of constitutionality, a statute restricting speech does not; the burden rests with the government to demonstrate that such a statute is constitutional. *Hornell Brewing Co. v. Minn. Dep't of Pub. Safety*, 553 N.W.2d 713, 716 (Minn. App. 1996).

Section 211B.02 provides:

A person or candidate may not knowingly make, directly or indirectly, a false claim stating or implying that a candidate or ballot question has the support or endorsement of a major political party or party unit or of an organization. A person or candidate may not state in written campaign material that the candidate or ballot question has the support or endorsement of an individual without first getting written permission from the individual to do so.

Because the statute prohibits speech based on its content, the statute implicates the protection afforded by the First Amendment.

 The First Amendment, which applies to the states through the Fourteenth Amendment, provides that "Congress shall make no law ... abridging the freedom of speech." *State v. Melchert-Dinkel*, 844 N.W.2d 13, 18 (Minn. 2014) (quoting U.S. Const. amend. I) (quotation marks omitted). The amendment establishes that the government generally "has no power to restrict expression because of its ... content." *Id.* (quotation omitted). Statutes regulating the content of speech are presumptively invalid and subject to strict-scrutiny

---

1. Moreover, whether the voter guide is a campaign material is irrelevant. Linert's complaint does not allege a section 211B.02 violation based on falsity of campaign materials.

analysis. *State v. Crawley*, 819 N.W.2d 94, 100 (Minn. 2012). "Content-based restrictions on speech survive First Amendment strict-scrutiny analysis only if they are necessary to serve a compelling state interest and are narrowly drawn to achieve that end." *Prolife Minn. v. Minn. Pro-Life Comm.*, 632 N.W.2d 748, 753 (Minn. App. 2001), *review denied* (Minn. Oct. 24, 2001). A statute is narrowly tailored if it advances a compelling state interest in the "least restrictive means among available, effective alternatives." *Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666, 124 S.Ct. 2783, 2791, 159 L.Ed.2d 690 (2004).

■ One such compelling state interest is promoting informed voting and protecting the political process. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 348-49, 115 S.Ct. 1511, 1519-20, 131 L.Ed.2d 426 (1995) (stating that a state has a special interest during elections in preventing false statements that, if credited, may have serious consequences for the public); *Daugherty v. Hilary (In re Contest of Election in DFL Primary)*, 344 N.W.2d 826, 832 (Minn. 1984) (stating that promoting informed voting is "essential in a free society"); *Schmitt v. McLaughlin*, 275 N.W.2d 587, 591 (Minn. 1979) (determining the state has a compelling interest in "protecting the political process"). MacDonald does not appear to challenge this jurisprudence. We are persuaded that section 211B.02's prohibition against false claims of support or endorsement serves a compelling state interest.

■ MacDonald contends that section 211B.02 is not narrowly tailored to serve this compelling interest because it is facially overbroad. "A statute is overbroad

on its face if it prohibits constitutionally protected activity, in addition to activity that may be prohibited without offending constitutional rights." *Dunham v. Roer*, 708 N.W.2d 552, 565 (Minn. App. 2006) (quotation omitted), *review denied* (Minn. Mar. 28, 2006). The overbreadth must substantially sweep outside the statute's plainly legitimate aim. *United States v. Williams*, 553 U.S. 285, 292, 128 S.Ct. 1830, 1838, 170 L.Ed.2d 650 (2008). A statute is not substantially overbroad when its excessive sweep can be cured on a case-by-case basis through an as-applied challenge. *State v. Washington-Davis*, 881 N.W.2d 531, 540 (Minn. 2016). Courts apply the overbreadth doctrine "only as a last resort." *Dunham*, 708 N.W.2d at 565 (quotation omitted).

The plainly legitimate purpose of Minn. Stat. § 211B.02 is preventing false speech that misleads the public regarding elections. MacDonald argues that the statute substantially sweeps outside this aim and chills truthful political speech because "a candidate cannot truthfully report a sub-unit's endorsement without threat of a violation that the statement is false because [the RPM] did not endorse." This argument is unavailing.

First, the statute on its face only prohibits a candidate from making a "knowingly ... false claim." Minn. Stat. § 211B.02. Truthful political speech is not proscribed by the statute. In *Schmitt*, our supreme court considered a predecessor statute of section 211B.02 that similarly prohibited a candidate from making a false claim of endorsement or support from a political party or sub-unit of a political party. 275 N.W.2d at 590.[2] The supreme court observed the statute was narrowly tailored to defeat an overbreadth challenge because it

**2.** Although the *Schmitt* court framed the issue as implicating due process, the court's analy-

sis focused on the First Amendment.

was "directed specifically at *false* claims of endorsement or support." *Id.* at 590-91 (emphasis added). Moreover, the statute's specific-intent requirement—that false claims be *knowingly* made—ensures that "the statute does not target broad categories of speech." *State v. Muccio,* 890 N.W.2d 914, 928 (Minn. 2017).

Second, we reject MacDonald's contention that the statute prohibits a candidate from truthfully reporting receipt of a party sub-unit's endorsement. Neither the statutory language nor OAH's decision supports MacDonald's assertion that the statute prohibits her from claiming endorsement or support of a sub-unit of the RPM because the party did not endorse her. OAH's determination that she violated section 211B.02 was not based on the fact that the RPM did not endorse her. Rather, OAH found that she violated the statute by claiming that the judicial-election committee endorsed her when it had not and lacked the authority to do so.[3] Indeed, OAH observed that MacDonald "could have truthfully stated in her candidate profile that a majority of the RPM's judicial election committee supported her candidacy." It is the falsity of her statement that the committee *endorsed* her candidacy that violated the statute.

Third, we are not convinced that there are effective less-restrictive means to promote the state's compelling interest in promoting informed voting and protecting the political process from false claims of support or endorsement. MacDonald relies on *United States v. Alvarez,* 567 U.S. 709, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012) (plurality opinion), to support her assertion that counterspeech is a less-restrictive means to promote the state's interest. In *Alvarez,* the United States Supreme Court held that the Stolen Valor Act's prohibition

against falsely claiming receipt of military decorations or medals is unconstitutional. 567 U.S. at 729-30, 132 S.Ct. at 2551. After determining that "[t]he Government's interest in protecting the integrity of the Medal of Honor is beyond question," the Supreme Court considered whether counterspeech would effectively protect this interest. *Id.* at 725, 132 S.Ct. at 2549. The government argued that the truthful-speech remedy was not effective because some military records are lost so the invalidity of certain false claims could not be proved. *Id.* at 728, 132 S.Ct. at 2550. The Supreme Court rejected this argument, concluding that the government failed to make the necessary showing that the "unchallenged claims undermine the public's perception of the military and the integrity of its awards system." *Id.*

In contrast, this court concluded that counterspeech is not an effective and less-restrictive means to achieve the compelling interest advanced by section 211B.02 in *Niska v. Clayton.* No. A13-0622, 2014 WL 902680, at *10 (Minn. App. Mar. 10, 2014), *review denied* (Minn. June 25, 2014). *Niska* involved a claim that false campaign materials violated section 211B.02. This court emphasized the different state interests reflected in the Stolen Valor Act and section 211B.02, stating, "[a]t stake in *Alvarez* was the dishonest speaker's reputation; at stake under [section 211B.02] is an accurately informed electorate." *Id.* And this court concluded "[t]he state need not rely on media corrections to vindicate its interest in protecting the electorate from falsehoods and safeguarding the integrity of its elections." *Id.* While the court's unpublished decision in *Niska* does not bind us, we find its reasoning persuasive. *See City of St. Paul v. Eldredge,* 788 N.W.2d 522, 526-27 (Minn.App. 2010) (stating un-

---

**3.** At oral argument, MacDonald's counsel indicated that she is not challenging OAH's

determination that her conduct violated section 211B.02.

published opinions are not precedential but "may have persuasive value"), *aff'd*, 800 N.W.2d 643 (Minn. 2011). Informed voting is "essential in a free society." *Daugherty*, 344 N.W.2d at 832. MacDonald has not demonstrated, and we are not persuaded, that counterspeech—even media statements and retractions—is an effective alternative means to combat false claims of support or endorsement. This is particularly true with respect to false claims made in the final days leading up to an election.

Finally, we disagree with MacDonald's argument that the threat of prosecution under section 211B.02 chills truthful speech. She contends that candidates are "easy targets" for meritless complaints and the statute therefore discourages candidates from making truthful claims of support or endorsement. But the statutory complaint process contains procedural safeguards to protect against such abuse. Complaints of unfair campaign practices, including those filed under section 211B.02, are subject to mandatory prima facie review by an ALJ within three days of filing. Minn. Stat. § 211B.33, subd. 1 (2016). The ALJ must dismiss complaints that do not set forth a prima facie violation. *Id.*, subd. 2(a) (2016). If a complaint establishes a prima facie violation, the ALJ may be required to conduct an expedited probable-cause hearing. *Id.*, subd. 2(c) (2016). If the ALJ does not dismiss a complaint following the probable-cause hearing, it must schedule an evidentiary hearing before a three-judge panel. Minn. Stat. §§ 211B.34, subd. 2(b), .35, subd. 1 (2016). And we note that complaints must be submitted under oath, further discouraging the filing of false complaints. Minn. Stat. § 211B.32, subd. 3 (2016); *see also* Minn. Stat. § 609.48, subd. 1(2) (2016) (defining the crime of perjury to include making a knowingly false statement "in any writing which is required ... to be under oath"). In sum, we are not persuaded that the threat of prosecution impermissibly chills protected speech.

### DECISION

On this record, we conclude that section 211B.02 is not unconstitutionally overbroad. The statute is narrowly tailored to serve the state's compelling interest in promoting informed voting and protecting the political process and does not substantially sweep outside the statute's legitimate aim. Because the statute is not unconstitutionally overbroad and OAH had subject-matter jurisdiction to consider Linert's complaint against MacDonald, we affirm OAH's decision.

**Affirmed.**