BJORKMAN, Judge
Relators, a political candidate and his campaign committee, challenge an order of the Minnesota Office of Administrative *447 Hearings (OAH) determining that they prepared and disseminated campaign material without the disclaimer required by Minn. Stat. § 211B.04, subd. 1. Relators argue that (1) the disclaimer requirement violates the right to free speech, (2) the complaint alleging the violation was untimely, and (3) substantial evidence does not support the determination that relators violated the disclaimer requirement. We affirm.
FACTS
In March 2017, relator David Hutchinson was contemplating running for Hennepin County Sheriff. He began collecting campaign contributions and created a "Hutch for Sheriff" Facebook page. He also paid a printing company to prepare four "prototype" lawn signs that read: "Elect HUTCH for Hennepin County Sheriff." Hutchinson posted a picture of the signs on Facebook. He also gave one to his father, who placed it in the front lawn of the Medina residence he rents from Hutchinson's brother, and one to a friend, who placed the sign in the front lawn of his Minneapolis residence. The other two signs remained in Hutchinson's garage.
On December 18, 2017, Hutchinson filed his candidacy and registered his campaign committee, relator Hutch for Sheriff. Hutchinson and his committee (collectively, Hutchinson) thereafter ordered more than 1,000 campaign signs bearing substantially the same message as the original four, as well as a disclaimer: "Paid for and prepared by the Hutch for Sheriff volunteer committee."
The following August, respondent Alex Lewison, the deputy treasurer of then-Sheriff Rich Stanek's volunteer campaign committee, saw the two posted signs that lacked disclaimers. The signs remained in place through the primary election. On August 22, 2018, Lewison filed a complaint with the OAH alleging that Hutchinson violated Minn. Stat. § 211B.04, subd. 1, by preparing and disseminating campaign material that lacked a disclaimer.[1] A panel of three administrative law judges conducted an evidentiary hearing and determined that Hutchinson violated the disclaimer requirement. Because the violation was inadvertent and had "minimal impact on voters," the OAH imposed a civil penalty of $ 200. Hutchinson appeals by writ of certiorari.[2]
ISSUES
I. Does the disclaimer requirement violate Hutchinson's free-speech rights?
II. Was the complaint timely?
III. Does substantial evidence support the determination that Hutchinson violated Minn. Stat. § 211B.04 ?
ANALYSIS
The OAH is charged with deciding claims of unfair campaign practices. Minn. Stat. § 211B.32, subd. 1(a) (2018). On appeal, we presume the OAH's decision is correct. Fine v. Bernstein , 726 N.W.2d 137, 142 (Minn. App. 2007), review denied (Minn. Apr. 17, 2007). We will reverse or modify the decision only if the relators' substantial rights have been prejudiced because the decision is affected by an error of law, unsupported by substantial evidence, *448 or arbitrary or capricious. Minn. Stat. § 211B.36, subd. 5 (2018) (providing for judicial review under Minn. Stat. § 14.69 (2018) ).
Minnesota law requires "any person who participates in the preparation or dissemination of campaign material" to "prominently include the name and address of the person or committee causing the material to be prepared or disseminated," in accordance with prescribed disclaimer language. Minn. Stat. § 211B.04, subd. 1(a). The requirement applies only to those subject to political registration or reporting laws. Id. , subd. 3(b). "Campaign material" is defined as "any literature, publication, or material that is disseminated for the purpose of influencing voting at a primary or other election." Minn. Stat. § 211B.01, subd. 2 (2018). A person subject to the disclaimer requirement who fails to include a disclaimer on campaign material is guilty of a misdemeanor. Minn. Stat. § 211B.04, subd. 1(a).
I. The disclaimer requirement does not violate Hutchinson's free-speech rights.
The constitutionality of a statute is a question of law, which we review de novo.[3] Linert v. MacDonald , 901 N.W.2d 664, 667 (Minn. App. 2017). "While statutes generally carry a presumption of constitutionality, a statute restricting speech does not; the burden rests with the government to demonstrate that such a statute is constitutional." Id. Nonetheless, we exercise our "power to declare a statute unconstitutional ... with extreme caution and only when absolutely necessary." State v. Hall , 887 N.W.2d 847, 852 (Minn. App. 2016) (quotation omitted), review denied (Minn. Feb. 22, 2017).
Hutchinson argues that the disclaimer requirement violates his First Amendment right to free speech, citing this court's decision invalidating the 2006 version of section 211B.04, Riley v. Jankowski , 713 N.W.2d 379 (Minn. App. 2006), review denied (Minn. July 19, 2006), and the Supreme Court's decision in McIntyre v. Ohio Elections Comm'n , 514 U.S. 334, 115 S. Ct. 1511, 131 L.Ed.2d 426 (1995), on which Riley relied. This argument is unavailing. Those cases concerned the right of independent actors to speak freely-and, if desired, anonymously-on political issues. McIntyre , 514 U.S. at 354-55, 115 S. Ct. at 1523 ; Riley , 713 N.W.2d at 404. But this case involves a political candidate and his campaign committee, not an independent actor.
With respect to political candidates, the United States Supreme Court has long recognized the validity of disclosure and disclaimer requirements. Buckley v. Valeo , 424 U.S. 1, 66, 96 S. Ct. 612, 657, 46 L.Ed.2d 659 (1976). The Buckley Court reasoned that, while such requirements burden free speech, they are permissible because they serve important governmental interests in: (1) "provid[ing] the electorate with information as to where political campaign money comes from and how it is spent by the candidate," (2) avoiding corruption, and (3) detecting campaign-finance violations. Id. at 66-68, 96 S. Ct. at 657-58 (quotation omitted). The Court affirmed this principle in McIntyre , even while recognizing that these governmental interests are not implicated by the political speech of independent actors.
*449 514 U.S. at 351 n.14, 354-55, 115 S. Ct. at 1521 n.14, 1522-23. And the Court has since reiterated, in upholding the federal disclaimer statute, 2 U.S.C. § 441d (2006),[4] that disclosure and disclaimer laws are a permissible means of informing the electorate "about the sources of election-related spending." Citizens United v. Fed. Election Comm'n , 558 U.S. 310, 366, 130 S. Ct. 876, 914, 175 L.Ed.2d 753 (2010) (citing Buckley , 424 U.S. at 64, 66, 96 S. Ct. at 656, 657 ). Such requirements "may burden the ability to speak, but they impose no ceiling on campaign-related activities and do not prevent anyone from speaking." Id. (quotations and citations omitted).
Consistent with Buckley and Citizens United , the current version of Minn. Stat. § 211B.04 expressly limits its reach to those "required to register or report under chapter 10A or 211A."[5] Minn. Stat. § 211B.04, subd. 3(b). This includes political candidates and campaign committees that accept or spend at least $ 750. Minn. Stat. § 211A.02 (2018). Hutchinson does not dispute that, by December 2017, he and his campaign committee were subject to those reporting and registration requirements.
Rather, Hutchinson contends that the disclaimer requirement unfairly burdens a first-time candidate such as himself. We disagree. Every political candidate must know-indeed, is presumed to know-the laws governing campaign practices, which are published in publicly available statutes. See Carlson v. Ritchie , 830 N.W.2d 887, 892 (Minn. 2013) (presuming that candidate was aware of political party caucus requirements). Difficulty learning the applicable laws does not make compliance with the laws themselves unfairly onerous. And equal application of those laws is the only way to further their substantial governmental purposes.
In sum, Minn. Stat. § 211B.04 imposes only the type of limited disclaimer requirement long permitted as a means of informing the electorate about the election-related spending of certain political actors. Because Hutchinson and his campaign committee are such actors, their challenge to the statute's constitutionality fails.
II. The complaint alleging a continuing violation of Minn. Stat. § 211B.04 was timely.
Claims of unfair campaign practices must be filed with the OAH "within one year after the occurrence of the act or failure to act that is the subject of the complaint." Minn. Stat. § 211B.32, subd. 2 (2018). The construction and application of a statute of limitations are questions of law, which we review de novo. Park Nicollet Clinic v. Hamann , 808 N.W.2d 828, 831 (Minn. 2011).
A statute of limitations begins to run once "all of the elements of the action have occurred, such that the cause of action could be brought and would survive a motion to dismiss for failure to state a claim." Id. When that occurs depends on "the nature of the wrongful conduct at issue." Id. at 837. But a statute of limitations does not run if the wrongful conduct *450 is part of "a continuing violation." Sigurdson v. Isanti County , 448 N.W.2d 62, 66 (Minn. 1989).
The claimed wrongful conduct here is Hutchinson's "dissemination" of lawn signs that did not contain disclaimers.[6] Chapter 211B does not define "dissemination." But courts often consider dictionary definitions to determine the plain meaning of a statutory term. Shire v. Rosemount, Inc. , 875 N.W.2d 289, 292 (Minn. 2016). The term dissemination is commonly defined to mean spreading, dispersing, circulating, or promulgating. See Black's Law Dictionary 574 (10th ed. 2014) (defining dissemination); The American Heritage Dictionary of the English Language 522 (5th ed. 2011) (defining disseminate). It is a concept similar to publication. See Black's Law Dictionary 1428 (10th ed. 2014) (defining publish as "[t]o distribute copies (of a work) to the public"). As such, in many instances dissemination of campaign material is a discrete act that, like other communicative acts, is complete upon transmission to a third party. See Abrahamson v. St. Louis Cty. Sch. Dist. , 819 N.W.2d 129, 138 (Minn. 2012) (holding time-barred an unfair-campaign-practices claim filed on November 4, 2010, with respect to a flyer dated "September/October 2009"); accord McGovern v. Cargill, Inc. , 463 N.W.2d 556, 558 (Minn. App. 1990) (holding that statute of limitations for defamation began to run when defendant placed defamatory material in its files rather than when plaintiff discovered that act).
Hutchinson urges us to hold, based on Abrahamson , that dissemination of campaign material is always a discrete act, and one he completed in early 2017 when he provided the lawn signs to his father and friend. We are not convinced that such a limitation is warranted. The definition of campaign material includes any "literature, publication, or material that is disseminated for the purpose of influencing voting." Minn. Stat. § 211B.01, subd. 2. This broad range extends well beyond the flyer in Abrahamson to encompass numerous other printed materials, as well as television, radio, and online materials. These different types of campaign materials communicate with voters in different ways. Accordingly, application of the statute of limitations for a dissemination claim must account for the type of campaign material involved and the communication method.
We are persuaded that any campaign material that communicates its message to voters continuously, whether by virtue of its nature or how it is disseminated, falls within the scope of the continuing-violation doctrine. The doctrine most commonly applies in cases of ongoing discrimination. Davies v. W. Pub. Co. , 622 N.W.2d 836, 841 (Minn. App. 2001), review denied (Minn. May 29, 2001). But it applies in other contexts when the "harmful effect is one that may be abated or discontinued at any time." N. States Power Co. v. Franklin , 265 Minn. 391, 122 N.W.2d 26, 30-31 (1963) (addressing ongoing trespass). "The emphasis is not on mere continuity but whether any present violation exists." Sigurdson , 448 N.W.2d at 67 (quotation omitted). So long as the violation continues into the limitations period, the statute of limitations does not bar the claim. See Davies , 622 N.W.2d at 841.
*451 The public display, or distribution for public display, of nonconforming lawn signs is such a continuing violation. A lawn sign does not simply serve to influence voting on the day it is posted; it does so continuously, potentially reaching a new audience each day it is displayed. And for every day that a lawn sign remains on display without the required disclaimer, a violation exists-one that may be abated at any time by removing the sign or adding the disclaimer.[7]
Moreover, applying the continuing-violation doctrine to the dissemination of nonconforming campaign material that communicates continuously supports the important purposes behind Minn. Stat. § 211B.04, subd. 1. The statute requires disclaimers to inform voters about election-related spending. See Citizens United , 558 U.S. at 366, 130 S. Ct. at 914 ; Buckley , 424 U.S. at 66, 96 S. Ct. at 657. Every day the campaign material is displayed without the disclaimer, the electorate lacks that vital information about its source.
Hutchinson's dissemination of campaign material in the form of lawn signs that lacked the required disclaimer continued unabated through August 2018. Accordingly, Lewison's complaint filed that same month was timely.
III. Substantial evidence supports the determination that Hutchinson violated Minn. Stat. § 211B.04.
The record establishes a substantial basis to support an OAH determination if "there is relevant evidence that a reasonable person would accept as adequate" to support the determination. In re A.D. , 883 N.W.2d 251, 259 (Minn. 2016). When determining whether this standard is met, we view factual findings "in the light most favorable to the decision," and we will not disturb those findings "if there is evidence reasonably tending to sustain them." Webster v. Hennepin County , 910 N.W.2d 420, 428 (Minn. 2018).
Hutchinson first challenges the OAH's finding that he disseminated the lawn signs "for the purpose of influencing voting at a primary or other election," as required for them to constitute campaign material under Minn. Stat. § 211B.01, subd. 2. He contends that he lacked the requisite intent because the signs were prototypes. We disagree. Hutchinson paid for four lawn signs that urged voters to "Elect HUTCH for Hennepin County Sheriff." He gave two of the signs to his father and his friend, who, as one might reasonably expect, posted them in public view. After filing his candidacy in December 2017, Hutchinson could have acted to ensure that the two "prototype" signs were modified to include the then-required disclaimer or removed. But he did not. And the signs remained in public view for at least eight months after he filed his candidacy and registered his campaign committee. During that time, Hutchinson also paid for the preparation of and disseminated numerous virtually identical lawn signs (but with a disclaimer), likewise urging voters to elect him. Overall, the record contains substantial evidence that Hutchinson disseminated the lawn signs for the purpose of influencing voting.
Hutchinson next argues that small signs stating only a candidate's name and the office he seeks are exempt from the disclaimer requirement because their origin is apparent, bringing them within the scope of the exemption for "items that are clearly being distributed by the candidate." Minn. Stat. § 211B.04, subd. 3(a). This argument *452 is unavailing. A lawn sign urging readers to vote for a political candidate is not connected to the candidate's person in any way; anyone could independently declare support for a candidate by placing a sign in public view. In this way, a lawn sign is unlike those items listed as examples in Minn. Stat. § 211B.04, subd. 3(a), which, by their nature, identify their origin-"fund-raising tickets, business cards, [and] personal letters." The record supports the OAH's determination that Hutchinson's lawn signs were not clearly distributed by him.
Like any other political candidate, Hutchinson was required to include a disclaimer to inform the public that he and his campaign committee-not some political action committee, lobbying group, or private citizen-prepared and disseminated the lawn signs promoting his candidacy. Because he failed to do so with respect to the two signs at issue here, the record supports the determination that he violated Minn. Stat. § 211B.04.
DECISION
Minn. Stat. § 211B.04 's requirement that political candidates and campaign committees include a disclaimer on campaign materials that they prepare and disseminate does not violate the First Amendment. The complaint alleging a continuing violation of that requirement was timely, and substantial evidence supports the OAH's finding that Hutchinson violated the statute.
Affirmed.

Lewison also claimed violation of campaign contribution limits, Minn. Stat. § 211A.12 (2018), false claims of support, Minn. Stat. § 211B.02 (2018), false campaign material, Minn. Stat. § 211B.06 (2018), and undue influence, Minn. Stat. § 211B.07 (2018). The OAH dismissed those claims, and they were not at issue on appeal.

During the pendency of this appeal, Hutchinson was elected Hennepin County Sheriff.

Lewison contends the constitutional issue is not properly before us because Hutchinson did not serve the attorney general with notice. But separate notice is required only if neither the state nor any of its agencies is a party in an official capacity. Minn. R. Civ. P. 5A. The OAH is a party to this appeal, and both the OAH and the attorney general received service of the writ of certiorari and Hutchinson's brief.

The federal statute has since been recodified at 52 U.S.C. § 30120 (Supp. 2017).

The legislature enacted this limitation in 2015, replacing the exception for independent actors that this court held inadequate in Riley . 2015 Minn. Laws ch. 73, § 22; see also Riley , 713 N.W.2d at 404 (holding that the independent-actor exception failed to protect free-speech rights because "there may be circumstances in which the disclaimer requirement is violated by completely truthful anonymous statements made by individuals acting independently from any candidate and using their own resources").

Because it is undisputed that Hutchinson prepared the lawn signs in March 2017, well over a year before the August 2018 complaint, the claim that he violated Minn. Stat. § 211B.04, subd. 1, by preparing nonconforming campaign material was untimely. But preparation and dissemination are independent violations. Lewison's failure to file a timely preparation-related claim does not undermine the OAH's decision.

We observe that the determination of a disclaimer violation, and what could be done to abate it in a particular case, is necessarily fact specific.