STATE OF MINNESOTA

IN SUPREME COURT

A25-0193

Workers' Compensation Court of Appeals                              Gaïtas, J.

Erin Lindsay,

                    Respondent,

vs.                                                             Filed: October 22, 2025
                                                                Office of Appellate Courts
Minneapolis Public School District (SSD1),
Self-Insured,

                    Relator.

————————————————

Jeremiah W. Sisk, David B. Kempston, Mottaz & Sisk Injury Law, Coon Rapids, Minnesota, for respondent.

Joshua M. Steinbrecher, Chris Wehr, Heacox, Hartman, Koshmrl, Cosgriff, Johnson, Lane & Feenstra, P.A., Edina, Minnesota, for relator.

————————————————

S Y L L A B U S

1.    The employee's injury occurred "in the course of" employment for the purpose of Minnesota Statutes section 176.021, subdivision 1 (2024), because the undisputed facts show that the employee sustained the injury within an hour of the end of the workday, the injury occurred at the workplace, and the employee was engaged in employment-related activity.

1

2.      Minnesota Statutes section 176.021, subdivision 9 (2024), which excludes from workers' compensation liability injuries that occur while an employee is participating in a voluntary employer-sponsored recreational program, applies only to employer programs that are for the benefit of employees.

Affirmed.

O P I N I O N

GAÏTAS, Justice.

The employee, a middle school teacher at a Minneapolis public school, injured her knee while playing basketball with students during an afterschool basketball practice. She sought workers' compensation benefits, but the self-insured employer denied liability. The employee filed a claim petition seeking benefits. Following an administrative hearing on her claim petition, a compensation judge determined that the employee's claim was compensable, concluding that the injury arose out of and in the course of the employee's employment and that the exclusion under Minnesota Statutes section 176.021, subdivision 9 (2024), for "[i]njuries incurred while participating in voluntary recreational programs sponsored by the employer," did not apply. The employer appealed to the Workers' Compensation Court of Appeals (WCCA), arguing that the employee's injury did not occur "in the course of" employment and that section 176.021, subdivision 9, excluded compensation benefits because the injury occurred during a voluntary employer-sponsored recreational program. The WCCA affirmed. Because we conclude that the employee's injury occurred in the course of her employment and that the exclusion

2

under section 176.021, subdivision 9 applies only to voluntary employer-sponsored recreational programs that benefit employees, we affirm.

**FACTS**

Respondent Erin Lindsay has been a math teacher in the Minneapolis Public School District since 2011 and has worked at Sullivan STEAM School (Sullivan) since 2020.[1] In February 2023, while playing basketball with her students during an afterschool basketball practice, Lindsay ruptured the anterior cruciate ligament (ACL) in her left knee. The injury required surgery and physical therapy, and Lindsay missed more than one month of work. Lindsay sought workers' compensation benefits from her employer, relator Minneapolis Public School District, Special School District 1 (the school district), which was self-insured for workers' compensation liability. The school district denied liability. Lindsay filed a claim petition seeking workers' compensation benefits. Following an administrative hearing on her claim petition, a workers' compensation judge determined that Lindsay was entitled to benefits. The WCCA affirmed. In this appeal, the school district challenges the WCCA's decision.

The undisputed facts in the record before us are as follows. Sullivan is a preschool-through-eighth-grade magnet school that focuses on science, technology, engineering, arts, and math (STEAM). It uses a project-based learning model, integrating 21st century skills and social emotional learning into its classes. According to Sullivan's principal, the "cultivation of strong relationships and collaboration with students is at the

---

[1] Lindsay did not work for the Minneapolis Public School District between 2017 and 2019.

core" of the school's approach.  The principal testified before the compensation judge that "[i]t's an expectation at Sullivan that teachers put in [social emotional learning] work and build relationships with students because [it] yields stronger academic outcomes." Sullivan's mission statement reflects this emphasis on relationship building:

> At Sullivan STEAM Magnet, every child has a place and voice.  Every member of the learning community creates knowledge and applies practice[s] of STEAM to solve relevant problems with project-based learning in culturally sustained ways[.] . . .  [T]his is possible through cultivation of strong relationships in collaboration [with] students, staff, families, and the greater community.

An instructional specialist/reading interventionist at Sullivan testified that the Standards of Effective Instruction, which Sullivan uses to evaluate teachers, include an expectation that teachers develop relationships with students and families.  According to the instructional specialist, if a teacher fails to build relationships with students, this shortcoming will be reflected in the teacher's formal evaluation, and the teacher will receive coaching "on how to build better relationships with their students."  The instructional specialist testified that one method of relationship building is using an "entry point," such as an activity of interest to students.

Sullivan teachers have discretion as to how to build relationships with students. According to Sullivan's principal, she and Sullivan's entire administration "encourage . . . teachers to be as creative as possible" when fostering student-teacher connections.  For example, the principal testified, teachers may participate in student "activities outside of normal school hours."

4

Lindsay testified before the compensation judge that she fosters connection with her students in part by joining them at lunch and recess and attending extracurricular activities, including sporting events, clubs, music programs, plays, family nights, and teen nights. The principal testified that she viewed Lindsay's participation in student activities as part of Lindsay's role as a teacher at Sullivan.

When Lindsay was injured, the workday for Sullivan teachers officially began at 7:00 a.m. every weekday and ended at different times depending on the day of the week. On Thursdays—the day of the week when Lindsay was injured—the workday officially ended at 3:00 p.m., although Lindsay typically worked until 3:30 p.m. because she participated in "ILT."[2]  Lindsay testified that it was not uncommon for her to arrive at school before 7:00 a.m. and to stay beyond 3:00 or 3:30 p.m. to grade assignments, plan lessons, set up her classroom, or "connect[] with students in after school activities." Lindsay's employment contract explicitly stated that she would be expected to work beyond her duty time occasionally:

> An important function of a teacher is to work with students on an individual basis and to work with the families.  To facilitate this goal, a longer teacher's day may occasionally be necessary.  Moreover, meetings may occasionally necessitate a longer workday.  Extension of the teacher's day shall not be regularly assigned . . . .  If frequent or lengthy extension of the workday is required, a teacher shall be paid at the hourly flat direct instruction rate, or an alternative duty schedule shall be arranged by mutual agreement between the teacher and the principal/supervisor.

---

[2]     The record does not reveal what the acronym ILT means, but the principal testified that it is a committee.

On February 8, 2023, several of Lindsay's students asked her to play basketball with them after school. Lindsay had previously attended student basketball practices four or five times. She had no formal affiliation with the school basketball team, and she did not receive compensation for participating in practices. Lindsay had never been told not to attend or participate in extracurricular activities, or that any injuries she sustained during her participation would not be covered by the school. Numerous teachers at Sullivan participated in student athletic activities to strengthen their relationships with their students.

The basketball coach gave Lindsay permission to join a practice and asked her to come the next day, Thursday, February 9, 2023. On February 9, Lindsay attended basketball practice after the school day ended. Lindsay explained to the compensation judge that she participated in the basketball practice in her capacity as a teacher for the purpose of strengthening her connections with her students.

During the practice, Lindsay was paired with a student for a rebounding drill. At around 4:00 p.m., Lindsay jumped up for a ball, landed, heard a "pop," and fell to the ground.

She later learned that she had ruptured her left ACL. To treat the injury, Lindsay had surgery and then participated in physical therapy. Lindsay missed more than a month of work.

Following this incident, Lindsay sought workers' compensation benefits, but the school district denied liability. Lindsay filed a claim petition for workers' compensation benefits. The school district denied her claim, maintaining that Lindsay's knee injury did

6

not arise out of and in the course of her employment. The school district asserted, among other things, that Minnesota Statutes section 176.021, subdivision 9—which excludes from workers' compensation liability "[i]njuries incurred while participating in voluntary recreational programs sponsored by the employer"—excluded the school district from liability for Lindsay's injury.

An administrative hearing was held before the workers' compensation judge on March 20, 2024. The issues before the compensation judge relevant to this appeal were whether Lindsay sustained a personal injury arising out of and in the course of her employment when she tore her ACL, and, if so, whether the exclusion in section 176.021, subdivision 9, barred her from receiving workers' compensation benefits.

Following the hearing, the compensation judge concluded that Lindsay's injury arose out of and in the course of Lindsay's employment. The compensation judge determined that Lindsay's claim arose out of her employment because there was "a causal connection between [her] employment[] [as] a math teacher who desires to facilitate better relationships in the classroom which was explicitly encouraged by her employer" and the hazard of playing basketball, which caused the injury. Moreover, the compensation judge determined that Lindsay's claim occurred "in the course of" employment because of the time and circumstances of her injury. The compensation judge observed that, because Lindsay was injured 30 minutes after the end of her workday, her injury occurred within a reasonable period beyond her working hours. And the compensation judge found that Lindsay's participation in the student basketball practice was reasonably incidental to her employment because she played basketball to foster her relationships with her students,

which was consistent with the school's philosophy, advanced the school's interests, and was expressly encouraged by school administration.

After concluding that Lindsay's injury arose out of and in the course of her employment, the compensation judge considered the applicability of section 176.021, subdivision 9, which excludes from liability for compensation injuries that occur during an employee's participation in an employer-sponsored recreational program. The compensation judge determined that the statute applies only to voluntary recreational programs that are for the benefit of employees. Because Lindsay "participated in the . . . basketball practice not for her own health, but for her students' benefit and to foster connections with them," the compensation judge concluded that the statutory exclusion did not apply.

The school district appealed the compensation judge's decision to the WCCA, raising the following issues: (1) whether the compensation judge erred in concluding that section 176.021, subdivision 9, does not bar compensability of Lindsay's claim; (2) "[w]hether the compensation judge committed an error of fact and law in determining that the employee's claimed personal injury . . . occurred in the course and scope of her employment"; and (3) "[w]hether the compensation judge's findings of fact and orders were clearly erroneous and not supported by substantial evidence in view of the entire record as submitted." The WCCA affirmed the compensation judge's decision. *Lindsay v. Minneapolis Pub. Schs.*, No. WC24-6567, 2025 WL 408594, at *1 (Minn. WCCA Jan. 30, 2025). It concluded that section 176.021, subdivision 9, did not bar Lindsay's claim for compensation because the afterschool basketball practice was not for the benefit

8

of the employee. *Id.* at \*4–5. The WCCA also concluded that the compensation judge's determination that Lindsay's injury occurred in the course of her employment was not manifestly contrary to the evidence. *Id.*

The school district appealed the WCCA's decision to this court.

## ANALYSIS

The school district challenges the WCCA's decision on two grounds. First, the school district argues that Lindsay's injury was not compensable because it did not occur in the course of her employment. Second, the school district contends that it is not liable for Lindsay's injury because Lindsay was injured while participating in an employer-sponsored voluntary recreational program, and Minnesota Statutes section 176.021, subdivision 9, shields employers from workers' compensation liability for injuries that occur during an employee's participation in such programs.

We first consider the school district's argument that Lindsay's injury did not occur in the course of her employment. Then, we turn to the applicability of section 176.021, subdivision 9, to this case.

### I.

To be compensable under the Workers' Compensation Act, an injury must "aris[e] out of and in the course of employment." Minn. Stat. § 176.021, subd. 1 (2024). We have interpreted this statutory language as containing two distinct requirements regarding the injury: that it be (1) "arising out of" employment and (2) "in the course of" employment. *Dykhoff v. Xcel Energy*, 840 N.W.2d 821, 826 (Minn. 2013).

9

The school district does not challenge the WCCA's affirmance of the compensation judge's determination that Lindsay's injury *arose out of* her employment. Instead, the school district argues that the evidence did not establish that Lindsay was injured *in the course of* her employment. Our review is therefore limited to the question of whether Lindsay was injured in the course of her employment. When the underlying facts are undisputed, we apply a de novo standard of review to determine whether an employee was injured in the course of employment. *See Hohlt v. Univ. of Minn.*, 897 N.W.2d 777, 780–81, 783–84 (Minn. 2017) (characterizing the compensability of an injury under the Workers' Compensation Act as a "question of law" and analyzing whether the employee's injury arose out of and in the course of employment without deference to the WCCA).[3] Because the underlying facts in this case are undisputed, we consider de novo whether Lindsay was injured in the course of her employment.[4]

---

[3] When the facts are undisputed, we also apply de novo review to the separate question of whether an injury arises out of employment. *Roller-Dick v. CentraCare Health Sys.*, 916 N.W.2d 373, 376 (Minn. 2018).

[4] The school district contends that the compensation judge "erred as a matter of fact and law" as to his ultimate determination that Lindsay's injury arose out of and in the course of employment and that, similarly, the compensation judge's factual findings were "clearly erroneous and not supported by substantial evidence." Before this court, however, the school district does not dispute any of the specific factual findings made by the compensation judge or the WCCA as to the underlying facts.

The WCCA stated that the issue of whether Lindsay was injured in the course of her employment is a question of law. *See Lindsay*, 2025 WL 408594, at *3 (citing *Roller-Dick*, 916 N.W.2d at 373). The WCCA then stated that "[a] determination of whether an injury occurs within a reasonable time and place is a mixed question of fact and law" and framed its inquiry as a determination of "whether factual findings support a legal conclusion." *Id.*

Because the underlying facts are undisputed, we must consider whether the WCCA erred as a matter of law when it determined that Lindsay was injured in the course of her employment. *See Hohlt*, 897 N.W.2d at 780–81, 783–84.

10

"An employee is in the course of employment while providing services to the employer and also for a reasonable period beyond actual working hours if an employee is engaging in activities reasonably incidental to employment." *Id.* at 783 (citation omitted) (internal quotation marks omitted). To determine whether an injury occurred "in the course of" employment, we consider, among other factors, the time of the incident that resulted in the injury in relation to work hours, the location of the incident that resulted in the injury, and the circumstances surrounding the injury. *See Gibberd ex rel. Gibberd v. Control Data Corp.*, 424 N.W.2d 776, 780 (Minn. 1988) (stating that the "in the course of employment" requirement "refers to the time, place, and circumstances of the incident causing the injury" (internal quotation marks omitted)); 2 Arthur Larson, Lex K. Larson & Thomas A. Robinson, *Larson's Workers' Compensation Law*, ch. 12, at 12-1 (2024) (stating that an injury satisfies the "course of employment" requirement "when it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto").

The school district does not dispute that Lindsay's injury occurred at Lindsay's workplace. This fact supports the conclusion that Lindsay's injury occurred in the course of employment. The school district's arguments focus only on the time of Lindsay's injury and the circumstances surrounding the injury. Thus, we limit our analysis to these two factors.

## A.

We first consider the timing of Lindsay's injury. An employee's injury is in the course of employment when it occurs during regular work hours or during "a reasonable

11

period beyond actual working hours if an employee is engaging in activities reasonably incidental to employment." *Hohlt*, 897 N.W.2d at 783 (citation omitted) (internal quotation marks omitted). In prior decisions, we have recognized that injuries occurring 45 minutes before the official beginning of an employee's workday and one hour after the official end of an employee's workday occurred within a reasonable period beyond actual working hours. *Satack v. State, Dep't of Pub. Safety*, 275 N.W.2d 556, 557 & n.1 (Minn. 1978) (observing that an employee's fall on the way to work, which occurred about 45 minutes before the start of the workday, was within a "reasonable time before she commenced work"); *Blattner v. Loyal Ord. of Moose*, 117 N.W.2d 570, 571, 574 (Minn. 1962) (determining that an employee who fell as he exited his workplace one hour after his shift had ended "left the premises within a reasonable period of time after his work terminated" and was entitled to compensation).

Lindsay tore her ACL at approximately 4:00 p.m. on a Thursday. Although the principal testified that the official workday for teachers at Sullivan ends at 3:00 p.m. on Thursdays, Lindsay testified that she typically worked until 3:30 p.m. on Thursdays because she participated in ILT. The compensation judge found that Lindsay sustained her injury 30 minutes after the end of her formal workday, and the WCCA affirmed that finding. Before this court, the school district does not contest the timing of Lindsay's injury or that the injury occurred about 30 minutes after the end of Lindsay's workday.[5] Our case

---

[5] The school district's brief contends that Lindsay's injury occurred "one hour after the end of her *typical* workday." (Emphasis added.) But the school district does not challenge the WCCA's affirmance of the compensation judge's finding that the injury occurred within 30 minutes after Lindsay's workday *on the date of the injury*.

law indicates that an injury occurring 30 minutes after the end of an employee's workday is within a reasonable period of working hours. *Blattner*, 117 N.W.2d at 571, 574.

The school district seeks to distinguish this case from *Satack* and *Blattner*, where we held that employees who were injured arriving at or leaving their workplaces sustained their injuries within a reasonable time beyond their actual work hours. *See Satack*, 275 N.W.2d at 557; *Blattner*, 117 N.W.2d at 571. According to the school district, there were no circumstances in those cases "taking the employee outside the scope of their employment." By contrast, the school district notes, Lindsay was not injured during her ingress or egress from work; she was injured playing basketball, which is an activity that is "attenuated" from her employment. This argument is unavailing. The school district conflates the *timing* of Lindsay's injury with the *circumstances* of the injury, which is a separate factor that we address below.

We conclude that Lindsay's injury occurred within a reasonable period beyond her workday. Therefore, this factor supports a determination that Lindsay was injured in the course of her employment.

B.

Next, we consider whether the circumstances of Lindsay's injury indicate that it occurred in the course of her employment. *See Gibberd*, 424 N.W.2d at 780. For an injury to occur "in the course of employment," the employee must be "engaging in activities reasonably incidental to employment." *Hohlt*, 897 N.W.2d at 783. A review of our case law reveals that we have not had an opportunity to fully address what qualifies as an "activit[y] reasonably incidental to employment." *Id.* (citation omitted) (internal quotation

13

marks omitted). In *Hohlt*, we determined that an employee who slipped and fell while walking to her car, which was parked in the employer's parking ramp four blocks from the employee's worksite, was engaged in an activity that was "reasonably incidental to employment." *Id.* at 784 (citation omitted) (internal quotation marks omitted). But our case law does not otherwise identify activities that are "reasonably incidental to employment."

According to a leading treatise on workers' compensation law, an employee sustains an injury "in the course of employment" when the employee was injured while engaging in "work duties or . . . something incidental thereto" or in "an activity whose purpose is related to the employment." 2 Larson et al., *Larson's Workers' Compensation Law*, ch. 12, at 12-1. "An activity is related to the employment if it carries out the employer's purposes or advances its interests directly or indirectly." *Id.*, ch. 20, at 20-1. Notably, according to this treatise, the "course of employment" includes "[a]n act outside an employee's regular duties which is undertaken in good faith to advance the employer's interests, whether or not the employee's own assigned work is thereby furthered." 3 Arthur Larson, Lex K. Larson & Thomas A. Robinson, *Larson's Workers' Compensation Law*, ch. 27 (2024).

We agree with this framework for determining whether an employee's activity was "reasonably incidental to employment." Applying the framework here, we conclude that Lindsay's injury occurred while she was engaged in an activity that was reasonably incidental to employment. The undisputed facts show that Lindsay participated in the student basketball practice, which was held in the school gym, at the request of her students and for the purpose of strengthening her relationships with her students. The Sullivan

14

administration expressly encouraged using activities outside of school hours to build relationships with students; indeed, the failure to build relationships with students would be reflected in a teacher's formal evaluation. And Lindsay's employment contract explicitly stated that the expectation to work with students would occasionally require working beyond her normal hours.

The school district contends that Lindsay's participation in the practice was not reasonably incidental to her employment because it was neither required nor "even remotely related to her work as a math teacher." Instead, the school district argues, Lindsay's participation was a voluntary choice beyond the scope of her role. The school district's focus is too narrow, however. Lindsay participated in the basketball practice to strengthen her relationships with students. Under Sullivan's approach to teaching, strengthening relationships with students was part of Lindsay's work as a teacher.

Lindsay's participation in the basketball practice was within the scope of her regular duties and advanced her employer's interests. Thus, her injury was reasonably incidental to her employment.

\* \* \*

The undisputed facts show that Lindsay's injury occurred about 30 minutes after work, within a reasonable time period after the official end of her workday; that Lindsay was injured at the school, the location of her employment; and that Lindsay was injured while engaged with students in an activity reasonably incidental to her employment as a teacher. Neither party points to any other facts that we should consider in analyzing whether Lindsay's injury occurred in the course of her employment. Given these

15

undisputed facts, we conclude as a matter of law that the injury occurred "in the course of" Lindsay's employment. Accordingly, the WCCA did not err in affirming the compensation judge's determination that Lindsay's injury occurred in the course of employment and was therefore compensable.

## II.

We next address whether Minnesota Statutes section 176.021, subdivision 9, barred Lindsay's claim for workers' compensation benefits. Section 176.021, subdivision 9, excludes from liability injuries incurred while participating in voluntary employer-sponsored recreational programs. The school district argues that Lindsay's injury is not compensable because she injured her knee during a voluntary employer-sponsored recreational program—a school basketball practice.

We begin our analysis with the language of the statute. Section 176.021, subdivision 9, provides:

> **Employer responsibility for wellness programs.** Injuries incurred while participating in voluntary recreational programs sponsored by the employer, including health promotion programs, athletic events, parties, and picnics, do not arise out of and in the course of the employment even though the employer pays some or all of the cost of the program. This exclusion does not apply in the event that the injured employee was ordered or assigned by the employer to participate in the program.

We previously considered the meaning of the word "voluntary" as used in section 176.021, subdivision 9, concluding that it means "[d]one or undertaken of one's own free will or done willingly and without constraint or expectation of reward." *Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 296 (Minn. 2016) (alteration in original) (citation

16

omitted) (internal quotation marks omitted).[6]  But we have not interpreted the phrase "voluntary recreational programs sponsored by the employer."  We take this opportunity to do so.

The interpretation and application of workers' compensation statutes present questions of law that we review de novo.  *Profit v. HRT Holdings*, 987 N.W.2d 575, 579 (Minn. 2023).  "The purpose of statutory interpretation is to ascertain the intention of the Legislature."  *Shire*, 875 N.W.2d at 292.  "When interpreting a statute, we first examine the statutory language to determine whether the statute is ambiguous, that is, whether the statute is susceptible to more than one reasonable interpretation."  *Profit*, 987 N.W.2d at 579–80 (citation omitted) (internal quotation marks omitted).  If we determine that the statute is unambiguous, we apply its plain meaning.  *Id.* at 580.  But if "more than one meaning is reasonable within [the] context" of the statute, the statute is ambiguous and we may apply the canons of construction to ascertain the Legislature's intent.  *State v. Henderson*, 907 N.W.2d 623, 626 (Minn. 2018); *see also* Minn. Stat. § 645.16 (2024) (providing guidance on ascertaining legislative intent).

The school district argues that the compensation judge and the WCCA erred in interpreting section 176.021, subdivision 9, to require that voluntary employer-sponsored

---

[6]     In *Shire*, an employee injured his ankle playing laser tag at an employee-recognition event that was held during the employee's normal work hours.  875 N.W.2d at 290–91.  Before the event, the employer informed employees that they could either attend the event, use vacation time, or request unpaid leave.  *Id.* at 290.  We held that section 176.021, subdivision 9, did not exclude the employee's injury from Workers' Compensation Act coverage because the employee could only opt out of the event by forfeiting compensation or vacation benefits.  *Id.* at 294–95.  Thus, the event was not "voluntary."  *Id.*

recreational programs be for the benefit of employees. It contends that the language of the statute contains no such requirement. Moreover, the school district maintains, considering the component terms of the phrase "voluntary recreational program sponsored by the employer" shows that the statute does not include a requirement that these programs benefit employees. In contrast to the WCCA's interpretation, the school district asserts that school-sponsored basketball practices are plainly voluntary recreational programs under section 176.021, subdivision 9. The school district points to the statute's nonexhaustive list of voluntary recreational programs, which includes "athletic events," to support this argument.

On the other hand, Lindsay urges us to interpret the statute as a whole, and not in its component parts. Using this approach, she argues that section 176.021, subdivision 9, applies only to programs geared toward employees. Lindsay maintains that the headnote to subdivision 9—"Employer responsibility for wellness programs"—makes clear that the exclusion refers only to wellness programs, i.e., programs that aim to improve employees' health and well-being. Additionally, Lindsay contends that the examples of voluntary recreational programs that are listed in the statute must be read in conjunction with the headnote to section 176.021—"Application to Employers and Employees." According to Lindsay, reading that headnote in conjunction with the listed examples makes clear that the subdivision only includes "health promotion programs, athletic events, parties, and picnics" for employers and employees, not to similar programs for students.[7]

---

[7]     In further support of her interpretation, Lindsay cites a WCCA decision, *Hansen v. Wyatt Ready Mix*, 44 Minn. Workers' Comp Dec. 276 (WCCA 1990). There, the WCCA

We agree with Lindsay that there is only one reasonable interpretation of section 176.021, subdivision 9: the exclusion applies only to employer-sponsored programs for the benefit of employees.

Our analysis begins by focusing on the word "recreational" in the statutory exclusion for "[i]njuries incurred while participating in voluntary recreational programs sponsored by the employer." Minn. Stat. § 176.021, subd. 9. The Workers' Compensation Act does not define this word. *See* Minn. Stat. § 176.011 (2022) (defining terms under the Workers' Compensation Act). When interpreting words that are not defined by a statute, we may look to dictionary definitions to ascertain their common and ordinary meanings. *State v. Thonesavanh*, 904 N.W.2d 432, 436 (Minn. 2017). Dictionary definitions of the word "recreation" support Lindsay's argument that employer-sponsored "recreational programs" are programs intended to benefit employees. One dictionary defines "recreation" as the "[r]efreshment of one's mind or body after work through activity that amuses or stimulates; play" and "[a]n activity that provides such refreshment." *The American Heritage Dictionary of the English Language* 1470 (5th ed. 2018) (emphasis added). Another dictionary defines "recreation" as "refreshment of the strength and spirits after toil" and "a means of getting diversion or entertainment." *Webster's Third New International Dictionary of the English Language Unabridged* 1899 (2002). Both of these definitions reflect that "recreation" means refreshment to those who *work*. Given the

___

concluded that the term "recreational programs" in section 176.021, subdivision 9, refers only to "programs sponsored by employers to promote employee health and fitness; psychological or social well-being; and goodwill between an employer and their employees." *Id.* at 278.

19

common and ordinary meaning of the word "recreation," the term "recreational programs" can only reasonably refer to programs that are for the benefit of employees.

This conclusion is underscored by the statute as a whole. *See Henderson*, 907 N.W.2d at 625 ("We read a statute as a whole and give effect to all of its provisions."). As noted, section 176.021, subdivision 9, lists four examples of a "recreational program": "health promotion programs, athletic events, parties, and picnics." Each of these examples suggests that the Legislature intended for "recreational programs" to refer to employer-sponsored programs for employee recreation. *See In re SIRS Appeal by Nobility Home Health Care, Inc.*, 999 N.W.2d 843, 857 (Minn. 2024) (explaining that we should give words grouped in a list related meanings). The decision to include "parties" and "picnics" particularly supports this legislative intent. Parties and picnics are commonly understood to be enjoyable leisure activities.

We are further persuaded by Lindsay's argument that the Legislature's reference to "wellness programs" in the headnote to section 176.021, subdivision 9, shows that "recreational programs" means programs that benefit employees. Generally, we do not consider headnotes when interpreting statutes. *See Buzzell v. Walz*, 974 N.W.2d 256, 264 n.7 (Minn. 2022) (citation omitted); *see also* Minn. Stat. § 645.49 (2024) (stating that headnotes are of no persuasive value). But we have observed that a headnote may be relevant to our interpretation of a statute "if present in the original legislative process." *S.M. Hentges & Sons, Inc. v. Mensing*, 777 N.W.2d 228, 231 n.1 (Minn. 2010) (concluding that a headnote added years after a provision's enactment "was not part of the original legislative process" and therefore was "not relevant" to the court's analysis). The headnote

20

to section 176.021, subdivision 9, which states, "Employer responsibility for wellness programs," *was* present in the original legislative process; the Legislature itself drafted the headnote before passing the session law. *See* Act of May 22, 1985, ch. 234, § 4, 1985 Minn. Laws 739, 745 (codified as amended at Minn. Stat. § 176.021, subd. 9). And the Legislature's use of the term "wellness programs" in the headnote further shows that subdivision 9 concerns programs that benefit employees. As Lindsay observes, the word "wellness" connotes activities that support and benefit a person's well-being.

Finally, we are convinced that the Legislature's use of the word "voluntary" indicates that voluntary employer-sponsored recreational programs are programs that benefit employees. We have already interpreted the word "voluntary" in this context as meaning "[d]one or undertaken of one's own free will or done willingly and without constraint or expectation of reward." *Shire*, 875 N.W.2d at 296 (alteration in original) (citation omitted) (internal quotation marks omitted). The fact that employees are not required to participate in the recreational programs referenced in section 176.021, subdivision 9, strongly suggests that such programs are for the benefit of employees and not the employer.

The school district argues that the reference to "athletic events" includes *any* athletic activity, which would encompass the afterschool basketball practice where Lindsay sustained her injury. We disagree. Under the associated words canon—*noscitur a sociis*—"words grouped in a list should be given related meanings."[8] *Nobility*, 999 N.W.2d at 857

---

[8]    We may apply the associated words canon in interpreting statutes that are either unambiguous or ambiguous. *Nobility*, 999 N.W.2d at 858.

(citations omitted) (internal quotation marks omitted); *see also County of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013) (defining and applying the associated words canon, which provides that "a word is given more precise content by the neighboring words with which it is associated" (citation omitted) (internal quotation marks omitted)). The inclusion of "health promotion programs," "parties," and "picnics" in the same list as "athletic events" indicates that the "athletic events" referenced in section 176.021, subdivision 9, include only recreational athletics for the benefit of employees, such as certain employer-sponsored athletic teams or races.

We conclude that a voluntary employer-sponsored recreational program under section 176.021, subdivision 9, is a program for the benefit of employees. Applying this interpretation here, we reject the school district's argument that the student basketball practice at Sullivan was a voluntary employer-sponsored recreational program within the meaning of the statute.

Accordingly, section 176.021, subdivision 9, does not exclude compensation for Lindsay's injury. The WCCA therefore did not err in affirming the compensation judge's determination that Lindsay's injury was compensable under the Workers' Compensation Act.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Workers' Compensation Court of Appeals.

Affirmed.