STATE OF MINNESOTA

IN SUPREME COURT

A23-1879

| | |
|---|---|
| Court of Appeals | McKeig, J.<br>Took no part, Hennesy, J. |
| Thaleaha McBee, | |
| Appellant, | |
| vs. | Filed: October 29, 2025<br>Office of Appellate Courts |
| Team Industries, Inc., | |
| Respondent. | |

_____

Daniel G. Leland, Ryan T. Conners, Leland Conners, PLC, Minneapolis, Minnesota, for appellant.

John A. Kvinge, Daniel J. Ballintine, Paige K. Clark, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, Minnesota, for respondent.

Stephen M. Premo, Premo Frank, PLLC, Minneapolis, Minnesota; and

Christopher J. Moreland, MSB Employment Justice LLP, Minneapolis, Minnesota, for amicus curiae the Minnesota Chapter of the National Employment Lawyers Association.

Leslie L. Lienemann, Celeste E. Culberth, Culberth & Lienemann, LLP, Saint Paul, Minnesota, for amicus curiae Employee Lawyers Association of the Upper Midwest.

_____

S Y L L A B U S

As used in Minnesota Statutes section 268.19, subdivision 2(c), the phrase "absolutely privileged" provides immunity from liability in civil actions for which information submitted to the Department of Employment and Economic Development, in

order to determine an applicant's entitlement to unemployment benefits, forms the subject matter or basis of the claim.

Affirmed.

O P I N I O N

MCKEIG, Justice.

Appellant Thaleaha McBee was terminated from employment at Team Industries, Inc. (Team) after she reported to Team staff that she was experiencing back problems. McBee sued Team under the Minnesota Human Rights Act (MHRA), alleging failure to provide reasonable accommodations and disability discrimination. Minn. Stat. §§ 363A.01–.50. Before trial, Team moved to exclude from evidence a questionnaire that it had completed and submitted to the Department of Employment and Economic Development (DEED) so that DEED could determine McBee's entitlement to unemployment benefits.[1] The district court excluded the questionnaire (DEED Questionnaire), relying on Minnesota Statutes section 268.19, subdivision 2(c), which provides: "Information obtained under the Minnesota Unemployment Insurance Law, in order to determine an applicant's entitlement to unemployment benefits, are absolutely privileged and may not be made the subject matter or the basis for any civil proceeding, administrative, or judicial." The district court reasoned that the DEED Questionnaire

---

[1] The Department of Employment and Economic Development is the agency that oversees and administers the Unemployment Insurance program in Minnesota. *Cf.* Minn. Stat. § 268.035, subd. 8a (defining Commissioner in the context of the Minnesota Unemployment Insurance statutes as "the commissioner of employment and economic development").

2

should be excluded because it was "information created or generated solely" for purposes of an application for unemployment insurance benefits. The court of appeals affirmed, holding that "information submitted to DEED for processing an unemployment-benefits claim is absolutely privileged and thus inadmissible in another civil, administrative, or judicial proceeding." *McBee v. Team Indus., Inc.*, 9 N.W.3d 592, 599 (Minn. App. 2024).

We disagree with the court of appeals' interpretation. We conclude that the phrase "absolutely privileged," as used by the Legislature in section 268.19, subdivision 2(c), is an immunity from liability, which in the context of the statute, shields an employer from liability for information it has communicated to DEED when that information is obtained by DEED "in order to determine an applicant's entitlement to unemployment benefits" and later "made the subject matter or the basis for" a civil proceeding. Section 268.19, subdivision 2(c), does not state an evidentiary rule of general inadmissibility. Because the DEED Questionnaire is not the subject matter or basis of McBee's employment discrimination claim, the district court erred by excluding the document from evidence at trial. Even so, McBee is not entitled to a new trial because the exclusion did not constitute prejudicial error. We therefore affirm the court of appeals, though on different grounds.

**FACTS**

Appellant McBee began working at a foundry operated by respondent Team Industries, Inc. in Detroit Lakes in September 2014.[2] In early 2015, McBee began

---

[2] For a more complete recitation of the background facts of this case, see our opinion in McBee's first appeal before us. *See McBee v. Team Indus., Inc.*, 925 N.W.2d 222, 224–27 (Minn. 2019).

experiencing back problems with nerve-related symptoms, including numbness and limited mobility in her hands. Based on these symptoms, a doctor placed McBee on a 10-pound lifting restriction to avoid additional injuries. Shortly after McBee notified Team of this lifting restriction, Team terminated McBee's employment without attempting to provide her with accommodations.

After her termination, McBee filed a claim for unemployment benefits with DEED. DEED sent Team an Unemployment Insurance Request for Information form (the DEED Questionnaire) to determine whether McBee qualified for unemployment benefits. The DEED Questionnaire included questions about McBee's employment, disability, and termination. One of these questions asked: "If you (the employer) were aware of the illness, injury, or medical condition, did you try to make accommodations for the applicant's situation?" Team checked a "No" box in response. Team further explained:

> Due to potential for paralysis (stated by [Employee] to supervisor, HR and several co-workers) and the unwillingness of her doctors to take her out of work, she claimed she could be paralyzed simply by looking up. We did not want to be liable for aggravating her injury and being subject to a work comp claim.

Team responded to several other questions on the form. Team then returned the DEED Questionnaire to DEED for its assessment of McBee's claim.

In June 2015, McBee filed a complaint against Team alleging, among other things, that Team violated the MHRA when it failed to reasonably accommodate her disability. During discovery, Team moved for a protective order to exclude the DEED Questionnaire from both discovery and admission at trial. The district court ruled that the DEED Questionnaire was discoverable but reserved its decision as to admissibility, expressly

4

stating: "Admissibility of these records at trial is NOT determined herein" and that admissibility was "an unresolved issue."

In July 2016, Team moved for summary judgment. The district court granted Team's motion, and the court of appeals affirmed that dismissal. We granted review, identified two genuine issues of material fact, and reversed and remanded for trial. *McBee v. Team Indus., Inc.*, 925 N.W.2d 222, 233 (Minn. 2019). Those issues of material fact were (1) whether McBee could perform the "essential functions" of her job with reasonable accommodation, *see* Minn. Stat. § 363A.08, subd. 6; and (2) whether her continued employment posed a serious threat to her health or safety (a defense to a claim of disability discrimination by an employer under Minn. Stat. § 363A.25). *McBee*, 925 N.W.2d at 230–33.

On remand, Team filed a motion in limine to exclude the DEED Questionnaire from evidence at trial. McBee filed an affirmative motion to admit it. Following a hearing, the district court granted Team's motion and excluded the DEED Questionnaire. In relevant part, it concluded that Minnesota Statutes section 268.19, subdivision 2(c), renders "information created or generated solely" for the purpose of assessing an application for unemployment insurance benefits inadmissible for any purpose in any civil proceeding held outside of that administrative case.[3] After a bench trial, the district court entered an

---

[3]    In addition, the district court concluded that the DEED Questionnaire is inadmissible pursuant to Minnesota Statutes section 268.105, subdivision 5(b), which governs the use of hearing testimony obtained upon referral for a direct hearing or during an appeal from the commissioner's determination of eligibility or ineligibility for unemployment benefits. In reaching its decision, the district court characterized the DEED Questionnaire as "testimonial in nature."

order resolving all disputed issues in Team's favor, ordered judgment for Team, and dismissed McBee's claim. McBee appealed.

The court of appeals affirmed the district court's decision. *McBee*, 9 N.W.3d at 603. It reasoned that the DEED Questionnaire is inadmissible in McBee's employment discrimination suit because the document is "absolutely privileged" under section 268.19, subdivision 2(c).[4] *McBee*, 9 N.W.3d at 599. We granted review on the issue of whether Minnesota Statutes section 268.19 prohibits the admission of documents like the DEED Questionnaire in a disability discrimination case filed under the employment provisions of the MHRA.

## ANALYSIS

Minnesota Statutes chapter 268 establishes Minnesota's unemployment insurance program, which is intended to promote the public good "by providing workers who are unemployed through no fault of their own a temporary partial wage replacement to assist the unemployed worker to become reemployed." Minn. Stat. § 268.03. Section 268.19 governs how information gathered under the administration of the Minnesota Unemployment Insurance Law may be disclosed or used. Concerning information submitted to DEED by employers, section 268.19, subdivision 2, states in part:

---

[4] Because the court of appeals read the district court order as relying on section 268.19 and because it concluded that statute is dispositive, the court of appeals did not address McBee's argument that the district court erred by concluding that the DEED Questionnaire is also inadmissible under Minn. Stat. § 268.105, subd. 5(b). *McBee*, 9 N.W.3d at 597–98 n.4.

6

(a) Regardless of any provision of law to the contrary, an employer may provide the commissioner with information on an applicant so that the commissioner can determine an applicant's entitlement to unemployment benefits under the Minnesota Unemployment Insurance Law.

. . . .

(c) Information obtained under the Minnesota Unemployment Insurance Law, in order to determine an applicant's entitlement to unemployment benefits, are *absolutely privileged* and may not be made the subject matter or the basis for any civil proceeding, administrative, or judicial.

(Emphasis added.).

The issue presented in this case is one of statutory interpretation. The parties advance different interpretations of the words "absolutely privileged" as used in Minnesota Statutes section 268.19, subdivision 2(c). McBee argues "absolutely privileged" is a legal term that means an actor has "complete immunity against *defamation claims*." McBee interprets subdivision 2(c) as codifying a commonly recognized rule of immunity by prohibiting employees from filing defamation claims against employers based upon the information they submit to DEED in connection with unemployment benefit applications. According to McBee, the district court erred by excluding the DEED Questionnaire because her lawsuit does not include defamation claims.

Team disagrees. It identifies "privileged" as an adjective that is independently modified by the adverb "absolute." It argues the word "privileged" is a legal term that means "inadmissible" and that "absolutely privileged" information is always inadmissible. Team interprets subdivision 2(c), as stating an evidentiary rule of inadmissibility that precludes employees from offering into evidence any information that employers submit to DEED in connection with unemployment benefits applications, regardless of the type of

7

claim an employee brings. According to Team, the district court correctly excluded the DEED Questionnaire.

The court of appeals agreed with Team's broad interpretation. It held: "[U]nder section 268.19, subdivision 2 information submitted to DEED for processing an unemployment-benefits claim is absolutely privileged and thus inadmissible in another civil, administrative, or judicial proceeding." *McBee*, 9 N.W.3d at 599. Below, we first interpret the meaning of "absolutely privileged" as it is used in the statute, considering whether it is a reference to immunity from liability or inadmissibility, as well as if it is limited to the defamation context, as McBee argues. Next, we apply that interpretation to the facts presented in this case, determining whether the DEED Questionnaire was appropriately excluded under section 268.19, subdivision 2(c), and if not, whether the exclusion of that evidence prejudiced McBee.

A.

The interpretation of a statute is a question of law that we review de novo. *Poehler v. Cincinnati Ins. Co.*, 899 N.W.2d 135, 139 (Minn. 2017). When interpreting a statute, our goal is to ascertain and effectuate the Legislature's intent. *Gen. Mills, Inc. v. Comm'r of Revenue*, 931 N.W.2d 791, 795 (Minn. 2019). The first step is to determine whether the challenged statutory language is unambiguous, that is, whether there is only one reasonable way to read the text. *In re Est. of Ecklund*, 20 N.W.3d 351, 355 (Minn. 2025). If there is only one reasonable way to read the statutory text, its meaning is plain. *Walsh v. State*, 975 N.W.2d 118, 122 (Minn. 2022). We give effect to the plain meaning because we presume plain and unambiguous statutory language expresses the Legislature's intent.

*Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016). "If, however, there is more than one reasonable interpretation, then the statute is considered ambiguous" and further analysis is required. *Ecklund*, 20 N.W.3d at 355. In this case, we must assess the reasonableness of each party's interpretation of the meaning of "absolutely privileged" as that phrase is used in section 268.19, subdivision 2(c).

When assessing the reasonableness of a statutory interpretation, "we analyze 'the statute's text, structure, and punctuation' and use the canons of interpretation." *Hagen v. Steven Scott Mgmt., Inc.*, 963 N.W.2d 164, 170 (Minn. 2021) (quoting *State v. Pakhnyuk*, 926 N.W.2d 914, 921 (Minn. 2019)); *see also State v. Riggs*, 865 N.W.2d 679, 682–83 (Minn. 2015) (discussing pre-ambiguity "canons of interpretation" and post-ambiguity "canons of construction"). We read "words and phrases . . . according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1). Phrases that have "acquired a special meaning . . . are construed according to such special meaning or their definition." *Id.*; *see also State v. Cannady*, 727 N.W.2d 403, 407 (Minn. 2007) (" 'When terms of art or peculiar phrases are used, it must be supposed they are used in the sense as understood by persons familiar and acquainted with such terms.' " (quoting *Minnesota & P.R. Co. v. Sibley*, 2 Minn. 13, 19 (1858))). When the Legislature has not defined a statutory term, we may consider dictionary definitions to determine the term's common usage, and when legal terms are referenced in statutes we often look to legal dictionaries. *See Getz v. Peace*, 934 N.W.2d 347, 354 (Minn. 2019) ("Because the phrase 'pursuant to' frequently appears as a legal phrase in statutory references, we may look to legal dictionaries to define it."); *Billigmeier v. Hennepin County*, 428 N.W.2d 79, 82

(Minn. 1988) (defining "collection" in the tax law context by reference to *Ballentine's Law Dictionary* and *Black's Law Dictionary*). Here, the Legislature has not defined "absolutely privileged" in section 268.19, subdivision 2(c), and we look to legal dictionaries for evidence of the legal term's meaning.

*Black's Law Dictionary* defines "absolute privilege" as "*[a] privilege that immunizes an actor from suit*, no matter how wrongful the action might be, and even though it is done with an improper motive. Cf. *qualified privilege.*" *Absolute Privilege*, *Black's Law Dictionary* (12th ed. 2024) (first emphasis added).[5] *Ballentine's Law Dictionary* similarly defines "absolute privilege" as conferring protection from liability, but specifically addresses this in the defamation context. *Absolute Privilege*, *Ballentine's Law Dictionary* (10th ed. 2010) ("The privilege which exists in the law of defamation when by reason of the occasion on which a defamatory communication is made or the matter in reference to which the communication is made, *no remedy can be had in a civil action.*" (emphasis added)). Likewise, Merriam-Webster's Dictionary of Law also expressly associates "absolute privilege" with immunity and notes that it frequently arises with respect to defamation, but does not limit the term exclusively to the defamation context. *Absolute Privilege*, *Merriam-Webster's Dictionary of Law* (2016) ("*a privilege that*

---

[5]    *Black's* directs the reader to compare "absolute privilege" with "qualified privilege," which it defines as "[a] privilege that immunizes an actor from suit only when the privilege is properly exercised in the performance of a legal or moral duty. . . . Cf. *absolute privilege.*" *Qualified Privilege*, *Black's Law Dictionary* (12th ed. 2024). This comparison highlights a common quality shared by the doctrines of "absolute privilege" and "qualified privilege," which is that they both confer immunity from liability in certain circumstances.

10

*exempts a person from liability* esp. for defamation regardless of intent or motive" and "*specif.* : a privilege that exempts high public officials (as legislators) from liability for statements made while acting in their official capacity without regard to intent or malice" (emphasis added)). All of these definitions describe "absolute privilege" as conferring protection from liability, and, in this sense, they strongly support McBee's argument that subdivision 2(c) states a rule of immunity, not a rule of inadmissibility.

Moreover, both the Legislature and this court consistently employ the phrase "absolute privilege" to express a rule of immunity. In particular, the Legislature has established "absolute privilege" as a defense to the offense of criminal defamation. *See* Minn. Stat. § 609.765, subd. 3(1) (false and defamatory communication is justified if "absolutely privileged"). And for well over 100 years, we have articulated a definition for "absolute privilege" that is in accordance with those stated in the dictionaries above. *See, e.g., Sherwood v. Powell*, 63 N.W. 1103, 1103 (Minn. 1895) (considering whether statements published in a court pleading are "absolutely privileged" and may not "be made the basis of an action for libel or slander"); *Matthis v. Kennedy*, 67 N.W.2d 413, 417 (Minn. 1954) (statements made by participants in judicial proceedings are absolutely privileged and "will not support a civil action for defamation"); *Johnson v. Dirkswager*, 315 N.W.2d 215, 223 (Minn. 1982) (high-level agency official "has an absolute privilege, in the performance of . . . official duties, to communicate defamatory material"); *Carradine v. State*, 511 N.W.2d 733, 736–37 (Minn. 1994) (state trooper had "absolute immunity from a civil suit in defamation for the statements made in the written police report"); *Zutz v. Nelson*, 788 N.W.2d 58, 61 (Minn. 2010) ("Two categories of privilege exist as defenses

11

against defamation claims—absolute privilege and conditional or 'qualified' privilege. Both types of privilege are broadly recognized across the United States, and generally 'result[] from the court's determination that statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory.' " (quoting *Lewis v. Equitable Life Assurance Soc'y*, 389 N.W.2d 876, 889 (Minn. 1986)); *Harlow v. State Dep't of Hum. Servs.*, 883 N.W.2d 561, 569–70 (Minn. 2016) (same). Based on the "common and approved usage" of the legal term "absolute privilege," we conclude that McBee's interpretation of in section 268.19, subdivision 2(c) as a rule of immunity is consistent with the plain language of the statute and thus reasonable.

On the other hand, Team's assertion that "absolute privilege" under subdivision 2(c) precludes employees from offering into evidence any information that an employer submits to DEED in connection with unemployment benefits applications in any future claim, regardless of type, is unreasonable for several reasons. Team has not cited, and we are unaware of, any Minnesota statute or case in which the phrase "absolute privilege" is ascribed a meaning other than the "acquired special meaning" discussed above as an immunity from liability. Although Team argues that the Legislature often uses the word "privileged" to mean "inadmissible," none of the statutes Team points to in support of its argument employ the phrase "absolutely privileged." *Compare* Minn. Stat. § 268.19, subd. 2(c) ("absolutely privileged" information "may not be made the subject matter or the basis for any civil proceeding, administrative, or judicial"), *with* Minn. Stat. § 169.09, subd. 13(b) (stating reports made to the commissioner of public safety concerning certain motor

12

vehicle accidents are "not discoverable" and "must not be used as evidence in any trial"), *and* Minn. Stat. § 595.02 (describing certain information as "privileged" and identifying individuals who may enforce a "privilege"). Nor has Team cited to any dictionary describing "absolute privilege" in reference to "admissibility" rather than "immunity." Team instead encourages this court to interpret section 268.19, subd. 2(c), in accordance with the *Black's Law Dictionary* entry for the word "privilege," standing alone. Because Team's interpretations do not fully reflect the language used by the Legislature in section 268.19, subdivision 2(c), we find them to be unpersuasive.

That "absolute immunity" under section 268.19, subdivision 2(c), refers to immunity from liability rather than inadmissibility is further confirmed when the language of the subdivision is considered as a whole. "Because the meaning of a phrase often depends on how it is being used in the context of the statute, we examine words and phrases in context." *State v. Townsend*, 941 N.W.2d 108, 110 (Minn. 2020); *see also Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 892 (Minn. 1994) ("The sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise."). Team's broad interpretation is inconsistent with the text of section 268.19, subdivision 2(c), as a whole, which expressly imposes a more limited restriction on use of the information. Specifically, subdivision 2(c) states that the "absolutely privileged" information *may not be made the subject matter or the basis for any civil proceeding, administrative, or judicial.*" Minn. Stat. § 268.19, subd. 2(c) (emphasis added). Team's interpretation is inconsistent with this text because information submitted to DEED may be relevant to a civil claim without being "the subject matter or

13

the basis for" that claim.  Reading the phrase "absolutely privileged" to mean the information is inadmissible in a later civil proceeding for any purpose whatsoever nullifies this limiting language and violates the canon against surplusage, as well as the whole-statute canon of interpretation.  *See In re Commitment of Benson*, 12 N.W.3d 711, 716 (Minn. 2024) (stating the canon against surplusage "directs us to avoid interpretations that would render a word or phrase superfluous, void, or insignificant."  (citation omitted) (internal quotation marks omitted)); *Riggs*, 865 N.W.2d at 683 (stating the whole-statute canon directs the court to "construe a statute as a whole and interpret its language to give effect to all of its provisions.").

Considering the full language and context of section 268.19, subdivision 2(c), however, also compels the conclusion that, contrary to McBee's argument, immunity from liability under this subdivision is not exclusively limited to defamation claims.  Again, section 268.19, subdivision 2(c), states: "Information obtained under the Minnesota Unemployment Insurance Law, in order to determine an applicant's entitlement to unemployment benefits, are absolutely privileged and may not be made the subject matter or the basis for any civil proceeding, administrative, or judicial."  Grammatically, the phrase "absolutely privileged" describes the legal status of "information" that an employer submits to DEED so that DEED may "determine an applicant's entitlement to unemployment benefits."  The phrase "may not be made" places a restriction on the way "information" having that status may be used—it "*may not be made the subject matter or the basis for* any civil proceeding, administrative, or judicial." *Id.* (emphasis added). Read together, the two phrases operate to shield employers from civil liability for information

14

provided to DEED in order to determine an applicant's eligibility for unemployment insurance benefits. There is nothing in this statutory language specifically limiting subdivision 2(c) to defamation claims. Rather, such an interpretation would effectively ignore the second phrase, which broadly applies to "*any* civil proceeding," not only claims of defamation.

Applying the plain meaning of the legal term "absolute privilege" consistently with its "acquired special meaning," and within the context of section 268.19, subdivision 2(c), as a whole, we conclude that the Legislature intended the phrase "absolutely privileged" to state a rule of immunity rather than admissibility, and not one narrowly limited only to defamation claims. As used in Minnesota Statutes section 268.19, subdivision 2(c), the phrase "absolutely privileged" shields employers from civil liability in proceedings for which information submitted to DEED, in order to determine an applicant's entitlement to unemployment benefits, forms the subject matter or basis of the claim.

B.

Having interpreted Minnesota Statutes section 268.19, subdivision 2(c), we now apply it to the facts of this case. Here, McBee filed an employment discrimination suit under the MHRA in which she alleged that Team failed to reasonably accommodate her disability. *See* Minn. Stat. § 363A.08 (describing unfair discriminatory practices relating to employment). The dispositive issues before the district court at trial were (1) whether McBee was a "qualified disabled person" for purposes of the MHRA; (2) if so, whether Team could demonstrate that providing accommodation would impose an undue hardship on its business; and (3) alternatively, whether McBee's continued employment posed a

15

serious threat to her own health or safety. *See McBee*, 9 N.W.3d at 597. McBee sought to admit the DEED Questionnaire as evidence that Team did not attempt to accommodate her disability before discharging her from employment. McBee's claim stems from Team's alleged conduct in the workplace—failing to reasonably accommodate her disability and terminating her employment. The DEED Questionnaire is arguably relevant to McBee's employment discrimination claim and may support that claim, but the employment discrimination claim does not arise out of Team's completion and submission of the DEED Questionnaire, and it exists independent of that communication.[6] For this reason, the DEED Questionnaire is not the "subject matter or the basis for" McBee's civil suit and its admission is not barred by section 268.19, subdivision 2(c). We therefore conclude that the district court erred by excluding the DEED Questionnaire under Minnesota Statutes section 268.19, subdivision 2(c), at trial.

---

[6]     In contrast, although our holding here is not limited to defamation claims, defamation is an example of a claim in which communicated information forms the subject matter or basis of the suit. *See, e.g.*, *Sherwood v. Powell*, 63 N.W. 1103, 1103 (Minn. 1895) (considering whether statements published in a court pleading are "absolutely privileged" and may not "be made the basis of an action for libel or slander"); *Larson v. Gannett Co.*, 940 N.W.2d 120, 130–31 (Minn. 2020) (defining the elements of a defamation action); *see also Mahoney & Hagberg v. Newgard*, 729 N.W.2d 302, 310 (Minn. 2007) (extending absolute privilege to claims "frame[d]" as breach of confidences, invasion of privacy, and civil conspiracy because the factual allegations supporting those claims "sound[ed] in defamation," stating "[r]egardless of the label, appellant's claims are in essence defamation claims; they are claims that arise as a consequence of Newgard's purported defamatory statements").

C.

Having determined that the district court erred by excluding the DEED Questionnaire under Minnesota Statutes section 268.19, subdivision 2(c), we must next determine whether the exclusion of that evidence prejudiced McBee. *See* Minn. R. Civ. P. 61 (requiring courts to disregard harmless error). When an error exists at trial, it is not grounds for reversal unless the error is prejudicial. *Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 98 (Minn. 1987). "An error in the exclusion of evidence is grounds for a new trial if it appears that the evidence 'might reasonably have changed the result of the trial if it had been admitted.' " *Becker v. Mayo Found.*, 737 N.W.2d 200, 214 (Minn. 2007) (quoting *Poppenhagen v. Sornsin Constr. Co.*, 220 N.W.2d 281, 285 (Minn. 1974)). "Where excluded evidence is merely corroborative of other evidence admitted in the case, prejudicial error does not result." *Hornof v. Klee*, 106 N.W.2d 448, 452 (Minn. 1960); *see also Poppenhagen*, 220 N.W.2d at 285. We do not assume error, and "the burden of showing error rests upon the one who relies upon it." *Midway Ctr. Assocs. v. Midway Ctr., Inc.*, 237 N.W.2d 76, 78 (Minn. 1975) (citation omitted) (internal quotation marks omitted).

Here, McBee sought to introduce the DEED Questionnaire to show that Team did not attempt to reasonably accommodate her disability before terminating her employment. After reviewing the evidence presented in the case, we conclude that the DEED Questionnaire is cumulative of other evidence admitted at trial. During trial, witness testimony established that Team management was concerned about aggravating McBee's injury and the potential for a workers' compensation claim if she were injured. Additionally, witness testimony from a Team manager established that Team did not try to

17

implement any accommodations after learning of McBee's 10-pound lifting restriction.[7] Thus, Team's failure to accommodate McBee prior to her termination was amply called to the attention of the factfinder through witness testimony such that the DEED Questionnaire could not reasonably have changed the result of the trial had it been admitted. Accordingly, we conclude that the error committed by the district court in excluding the DEED Questionnaire under Minnesota Statutes section 268.19, subdivision 2(c), was not prejudicial.[8]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals, though on other grounds.

Affirmed.

HENNESY, J. took no part in the consideration or decision of this case.

---

[7] At trial, Mark Kiser, a Team plant manager, testified as follows:

Q: Did you try to implement any accommodations of Miss McBee after you learned of these restrictions and the paralysis risk?
A: If I understand the word implement by actually asking her to attempt to perform it physically, no.
Q: Why not?
A: We couldn't come up with a scenario that would fit the ten pound [lifting restriction].

[8] Team also argued for the exclusion of the DEED Questionnaire under Minn. R. Evid. 403. Because we conclude that exclusion of the DEED Questionnaire was a harmless error, we need not reach this argument.

18